UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SALLY McKIMMY, | No. ED CV 04-1388-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 15, 2005, seeking review of the Commissioner's denial of her applications for Disability Insurance benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on March 28, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 7, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 28, 1951. [Administrative Record ("AR") at 76.] She has a high school education and has attended some college. [AR at 98, 270.] Plaintiff previously worked as a data entry clerk, secretary, and receptionist. [AR at 94, 123, 283-85.]

On July 9, 2001, plaintiff protectively filed an application for disability benefits, which was denied at the initial level of adjudication. [AR at 23-26, 75-78.] On May 14, 2002, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, in which she alleged that she has been unable to work since February 7, 2002, due to "constant pain." [AR at 79, 121-29.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on October 2, 2003, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 267-89.] A medical expert and a vocational expert also testified. On November 5, 2003, the ALJ determined that plaintiff was not disabled because she retains the ability to perform light work activity.[1] [AR at 10-19.] When the Appeals Council denied review on October 13, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability. [AR at 18.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of "multiple joint pains and athralgias, chronic obstructive pulmonary disease, and a depressive disorder, not otherwise specified." [AR at 16.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR at 18.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform light work. [Id.] At step four, the ALJ determined that plaintiff is able to perform her past relevant work as a data entry clerk and a receptionist. [Id.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

/
/
/
/

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred by (1) failing to properly assess her credibility, and (2) failing to properly consider certain lay witness evidence. Joint Stipulation ("Joint Stip.") at 3. For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

## A.  THE ALJ'S DETERMINATION OF PLAINTIFF'S CREDIBILITY

Plaintiff asserts that the ALJ "did not provide clear and convincing reasons for discrediting [her] testimony." Joint Stip. at 6. In particular, plaintiff argues that although she testified that she has pain in her body and head, and suffers from fatigue, the ALJ's findings are "insufficient" because the ALJ "did not properly identify what part of the ... testimony was credible and what was not credible." Joint Stip. at 3-4, 6.

Because plaintiff produced medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support the alleged severity of pain or other symptoms. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record;

and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In the decision, the ALJ noted that plaintiff testified "she has disabling pain which diminishes her ability to concentrate" and that "she feels weary and stays in bed most of the time." [AR at 15.] The ALJ concluded, however, that plaintiff's allegations regarding the severity of her impairments were "not credible." [AR at 17.] Because there is no evidence of malingering, the ALJ's reasons for rejecting plaintiff's credibility must be clear and convincing to withstand reversal or remand. Benton, 331 F.3d at 1040.

The ALJ articulated two specific reasons for finding plaintiff not credible: (1) plaintiff quit her previous job in Chicago, Illinois, to come to California to care for her parents; and (2) plaintiff's daily activities "are inconsistent with the level of debilitation" she alleges. [AR at 17.] Upon review of the record, the Court finds that the stated reasons have ample support, and are sufficiently clear and convincing.

First, plaintiff testified that she quit her job in Illinois in February, 2000, to come to California to be with her parents, as she "had gone through a divorce" and needed "to kind of just have some time to figure out what [she] was going to do." [AR at 271.] Soon after she arrived, her father became ill, and she became her parents' caretaker. [AR at 271-73.] Whether or not plaintiff's purpose in quitting her job and moving was to care for her elderly parents, or was to just "figure out what [she] was going to do" following her divorce (which ultimately led to her caring for her parents), it is evident from plaintiff's testimony that did not stop working due to disabling pain or fatigue. The ALJ appropriately relied on this fact as a basis for rejecting her subjective complaints. See Soria v. Callahan, 16 F.Supp.2d 1145, 1152 (C.D.Cal. 1997) (ALJ's finding that the plaintiff stopped working due to circumstances other than medical problems undermines the

plaintiff's credibility). Although the benefits application at issue states that the disability onset date was February 7, 2002 [AR at 121-22], the Court notes that in her original application, plaintiff claimed February 7, 2000, as the day she was unable to continue working due to her alleged limitations. [AR at 92-93.]   This clear inconsistency between her testimony and her original application further strengthens the ALJ's credibility determination.[3]  However, to the extent that the discrepancy in the onset dates renders the actual onset date ambiguous, and may allow the inference that plaintiff did in fact stop working due to her alleged condition, the Court concludes that remand is still unwarranted.  The ALJ's reliance on plaintiff's admitted daily activities (see infra) is by itself a sufficiently clear and convincing reason to justify the rejection of plaintiff's subjective complaints.

Next, with respect to daily activities, plaintiff testified that she drives, washes dishes, and does the cooking, grocery shopping, and laundry. [AR at 272.] The record shows that she has been taking care of her parents since before October 2001, and although her father is recently deceased, she continues to care for her mother. [AR at 162, 215, 271-72.] According to her Daily Activities Questionnaire prepared on October 14, 2002, plaintiff is responsible for preparing breakfast, making the beds, doing the laundry, preparing dinner on a daily basis, vacuuming, dusting, taking daily walks to get the mail, running errands one to two times every week, going grocery shopping, and picking up prescriptions. [AR at 146-49.]

It is well established that an ALJ is permitted to contrast a claimant's activities with her complaints of debilitating symptoms to determine whether an adequate basis for rejecting the subjective complaints exists. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). Here, plaintiff's admitted daily tasks are numerous and substantial, and many -- such as cleaning, vacuuming, and

---

[3] Plaintiff also reported to a consultative examiner in October, 2001, that she stopped working in February 2000, and was presently taking care of her parents. [AR at 162.]

shopping -- are physical in nature. She is able to care for both herself and her mother. It was therefore proper for the ALJ to premise her rejection of plaintiff's complaints on the basis that her activities of doing housework, driving, shopping, cooking, and vacuuming, are inconsistent with her allegations of pain and fatigue. [AR at 17.] In light of plaintiff's testimony, it was reasonable for the ALJ to surmise that, if plaintiff were truly experiencing pain and fatigue to the extent alleged, she would not be able to accomplish so many daily chores.

Based on the foregoing, the Court concludes that the ALJ's proffered reasons for rejecting plaintiff's testimony are legally sufficient. Reversal or remand on this issue is not warranted.

## B.  THE CONSIDERATION OF THIRD PARTY INFORMATION

Plaintiff contends that the ALJ failed to appropriately consider the third party questionnaire completed by her mother on October 16, 2002. Joint Stip. at 9-10. In the questionnaire, the mother stated that plaintiff "complains of waking thru the nite [sic]" and that she "does not attend [any community or social groups] anymore." [AR at 153, 155.] When asked if plaintiff goes to movies, concerts, or other entertainment activities, the mother responded "[s]he never does any of these things." [AR at 156.] According to plaintiff, these statements by plaintiff's mother reflect a "severe reduction[] in activities" that "may indicate the Plaintiff suffers from pain and fatigue." Joint Stip. at 10. The ALJ did not address the questionnaire. Plaintiff argues that this omission was erroneous and warrants remand. Id.

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "[i]n addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [the plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or

merely malingering.... [T]his is particularly true of witnesses who view the claimant on a daily basis..."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919.

The ALJ, however, "does not need to meet the impossible burden of mentioning *every* piece of evidence" presented to her. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991) (emphasis in original). As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). In Vincent, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled. Id.

The view that an ALJ need not discuss every piece of evidence, even when that evidence is from a lay witness, has found support in the Seventh and Eighth Circuits, especially when lay witness testimony does little more than corroborate a plaintiff's own testimony. In Books v. Chater, a Seventh Circuit decision, the court held that "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence...[and to enable] us to trace the path of the ALJ's reasoning." Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) (citations and internal quotations omitted). Since plaintiff's brother's testimony in Books "did not constitute a separate 'line of evidence,'" but "served strictly to reiterate, and thereby corroborate, [the plaintiff's] own testimony concerning his activities and limitations" -- and the plaintiff's testimony was found by the ALJ to be "untenable" when contrasted with his daily activities and the medical evidence -- the court held that the ALJ's failure to specifically discuss the plaintiff's brother's testimony was not error. Books, 91 F.3d at 980. Similarly, in Young v. Apfel, the Eighth Circuit held that "[a]lthough specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" as long as the ALJ's "ultimate finding is supported by substantial evidence in the record." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). In Young, since the same evidence the ALJ used to discount the plaintiff's testimony "also support[ed] discounting the

testimony of [the plaintiff's] husband," the court held that "the ALJ's failure to give specific reasons for disregarding [the husband's] testimony [was] inconsequential." Id.

The Court has reviewed the clinical findings, and concludes that the ALJ's determination regarding plaintiff's physical and mental capabilities is based upon substantial evidence. With respect to plaintiff's physical impairments, the consultative examiner, Dr. David Drake, examined plaintiff on two occasions, and both times concluded that she was able to perform the equivalent of light work (i.e., lifting no more than twenty pounds occasionally and ten pounds frequently) with no significant limitations other than avoiding climbing and balancing. [See AR at 162-66, 215-19.] The medical expert agreed that plaintiff's residual functional capacity is limited to light work, and added that she "should not work in environments that expose her to excessive dust, chemical or fumes." [AR at 282.] The ALJ found the expert to be credible, and premised plaintiff's RFC on the expert's determination. [AR at 16-17.]

As for plaintiff's alleged mental disorder, the ALJ found that plaintiff experiences "no more than mild restriction[s] of activities of daily living; no more than mild difficulties in maintaining social functioning[,] ... concentration, persistence and pace; and no extended episodes of decompensation." [AR at 16.] This finding by the ALJ has ample support, as it is in line with the examination results of the psychiatric consultant, Dr. Reynaldo Abejuela, which revealed that plaintiff was alert, oriented, and had adequate judgment, with only mildly impaired attention span, concentration, and memory. [See AR at 229-34.] As set forth by Dr. Abejuela, plaintiff can follow simple and complex job instructions, is capable of handling her own money, and has no severe impairments preventing her from being able to interact appropriately in the workplace or deal with changes in a routine work setting. [AR at 233-34.]

As mentioned above, plaintiff asserts that her mother's comments that she does not attend community groups or entertainment activities and has interrupted sleep indicate that plaintiff experiences pain and fatigue. In essence, the comments only serve to corroborate plaintiff's subjective complaints -- which, as explained in the preceding section, were properly refuted by the ALJ. It follows, then, that the evidence the ALJ used to discredit plaintiff's complaints (i.e., she stopped working for personal reasons and not due to physical ailments, and takes part in

1  substantial daily activities) also supports the rejection of the mother's statements. See Young,
2  221 F.3d at 1068; Books, 91 F.3d at 980.

3  As shown, substantial medical evidence supports the ALJ's decision that plaintiff did not suffer from disabling physical or mental impairments. The statements at issue in the questionnaire offer nothing probative to this determination. Any error by the ALJ in not discussing plaintiff's mother's third party questionnaire is harmless. See Vincent, 739 F.2d at 1395. The Court concludes that reversal or remand on this issue is not warranted.

## VI.
## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 22, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE